UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **OMNI ENERGY SERVICES CORPORATION AND GIBSON ENERGY, INC.** | **CIVIL ACTION** |
| **Plaintiffs** | **NO.** |
| **VERSUS** | **JUDGE** |
| **AMERICAN ZURICH INSURANCE COMPANY AND AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY** | **MAGISTRATE** |
| **Defendants** | |

**COMPLAINT**

**TYPE OF PROCEEDING**

This is an action by plaintiffs Gibson Energy, Inc. and Omni Energy Services Corporation (collectively, "Gibson") seeking damages suffered by Gibson as a result of defendants' breach of their duties of good faith and fair dealing under both the Louisiana Civil Code and the Louisiana Revised Statutes, and seeking declarations, pursuant to 28 U.S.C. § 2201, that:

> a) defendants have a duty to defend plaintiffs in the claims asserted by Lorena Aguilar, As Administratrix of the Estate of Jose Aturo Aguilar in Civil Action No. CK-24-2015-C-1 in the Circuit Court of Marion County, West Virginia (the "Underlying Action"), pursuant to the terms and conditions of the insurance policies (as defined below) purchased from defendants; and
>
> b) defendants have an obligation pursuant to the terms and conditions of the insurance policies purchased from defendants to pay a settlement that may be reached or a judgment that may be entered in the Underlying Action

Plaintiffs also seek pre-judgment and post-judgment interest, reasonable attorneys' fees, court costs, and all damages available under applicable law.

1

## PARTIES

1. Plaintiff Omni Energy Services Corporation ("Omni"), is a Louisiana corporation with its principal place of business at 4500 NE Evangeline Throughway, Carencro, Louisiana.

2. Plaintiff Gibson Energy, Inc., is a corporation organized and existing under the laws of Calgary, Alberta, Canada, with principal place of business at 440 2nd Avenue SW, Calgary, Alberta.

3. Defendant American Zurich Insurance Company is an Illinois corporation with principal place of business at 1400 American Lane, Schaumburg, Illinois 60196-1056.

4. Defendant American Guarantee & Liability Insurance Company is an Illinois corporation with its principal place of business at 1400 American Lane, Schaumburg, Illinois 60196-1056.

## JURISDICTION AND VENUE

5. This action seeks declaratory relief and damages resulting from defendants' violations of civil law and statutory duties, under Louisiana law, between parties that are citizens of different states and concerning damages in excess of $75,000.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332.

6. Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events that are the subject of this action occurred within this district.

7. An actual controversy exists between the plaintiffs and the defendants concerning plaintiffs' rights and the defendants' obligations under the insurance policies.

## BACKGROUND

**I.     The Insurance Policies**

8. American Zurich Insurance Company ("American Zurich") sold to Omni a Workers Compensation and Employers Liability insurance policy, with policy number 5525007-

00 with policy period of 07/01/2012 through 07/01/2013, and limits of $1 million for each accident (the "Zurich Employers Liability insurance policy.")

9. American Guarantee & Liability Insurance Company ("American Guarantee") sold to Omni a Commercial Umbrella Liability insurance policy, with policy number UMB 5833814 00 with policy period 07/01/2012 through 07/01/2013, and limits of $25 million per occurrence (the "Zurich Umbrella insurance policy"). The Zurich Employers Liability insurance policy and the Zurich Umbrella insurance policy are collectively referred to herein as the "Zurich Insurance Policies." American Zurich and American Guarantee are collectively referred to herein as "Zurich" or "Zurich Insurance Company."

10. The Zurich Employers Liability insurance policy is one of the insurance policies that is listed on the schedule of underlying insurance on the Zurich Umbrella insurance policy.

11. Omni is the named insured on both the Zurich Employers Liability insurance policy and the Zurich Umbrella insurance policy.

12. In 2012, Gibson, through various intermediate entities, acquired Omni.

## II. Background

### A. The Louisiana Seismic Group

13. One of the original divisions within Omni is the seismic division; that division has been a part of Omni, now part of Gibson, for more than 20 years.

14. The employees in Gibson's seismic division are based out of the company's offices in Carencro, Louisiana, and regularly operate in the field in various locations around North America.

15. The crews that are part of the seismic division are hired in Louisiana, their payroll is declared in Louisiana, and Gibson administers workers compensation claims of its seismic division employees in Louisiana.

16. Gibson identifies the geophysical exploration employees within the seismic division as "8606V" employees for the purpose of its Zurich Employers Liability insurance policy.

17. When Gibson purchased the Zurich Employers Liability insurance policy from Zurich, Gibson reported $2,567,213 in estimated annual remuneration for the employees and drivers within the geophysical exploration group, which is part of the seismic group, based in Louisiana.

18. Using that total estimated annual remuneration, Zurich charged $7.76 per $100 of remuneration and collected insurance premiums of $195,905 from Gibson, in exchange for Zurich's agreement to accept the risk of workers compensation and employer's liability claims associated with the work performed by Gibson's geophysical exploration crews.

19. Zurich audited Gibson's employee payroll on a regular basis and would, in some instances, make changes to the premiums charged for the insurance policy based upon the payroll that was reported.

**B. Gibson's Work at the Loveridge Mine in West Virginia**

20. Gibson contracted to provide certain services in connection with geophysical data acquisition at the Loveridge Mine site.

21. A crew from Gibson's seismic division, specifically a geophysical exploration crew that was based in Louisiana, travelled to West Virginia to conduct a preliminary geophysical analysis at the Loveridge Mine site.

22. That crew was based in Louisiana, its payroll was reported in Louisiana, and the crew was all 8606V employees as reported by Gibson to Zurich in connection with the Zurich Employers Liability insurance policy.

23. The Louisiana crew was not working in West Virginia long enough for Gibson to be required to declare payroll in West Virginia.

24. On January 14, 2013, there was an accident at the Loveridge Mine site. On that day, one of Gibson's Louisiana crewmen was driving a Marooka crawler at the Loveridge Mine site, and accidentally rolled the crawler.

25. Because that crewman, Jose Aguilar, was not wearing a safety harness, he was thrown from the crawler; the crawler rolled onto him and he died from his injuries.

26. Mr. Aguilar's widow is receiving worker's compensation benefits from Gibson; those benefits are being administered and paid in Louisiana.

27. Mr. Aguilar was an employee within Gibson's seismic division, specifically an employee in the geophysical exploration group identified in the Workers Compensation Classification Schedule in the Zurich Employers Liability insurance policy.

28. Mr. Aguilar was hired in and based in Louisiana.

29. Gibson declared Mr. Aguilar as a Louisiana employee, whose wages were reported to Texas, for the purposes of worker's compensation requirements and payroll.

30. Mr. Aguilar was a W-2 employee listed and declared as part of Gibson's Louisiana payroll, and his wages were reported to Texas.

31. Mr. Aguilar is one of the employees whose estimated annual remuneration is included in the payroll that Gibson reported for its seismic division, specifically the geophysical exploration group, and for which Zurich calculated and charged Gibson $196,905 in premiums.

32. As with the other employees in the seismic division, Mr. Aguilar's payroll was administered in Louisiana, and reported to Texas.

33. Gibson did not declare, nor was it required to declare, payroll in West Virginia for Mr. Aguilar, because of the brief time during which Gibson was doing work in West Virginia.

34. Mr. Aguilar's employment was necessary or incidental to Gibson's work in Louisiana.

### C. The Underlying Action.

35. The Underlying Action was filed against Gibson on January 6, 2015 in the Circuit Court of Marion County, West Virginia.

36. In the Underlying Action, it is alleged that Mr. Aguilar died when a Marooka crawler rolled over onto him.

37. At the time of the accident, Mr. Aguilar was driving the Marooka crawler without wearing the safety harness. As a result, he was ejected from the crawler when it rolled, and was crushed by the crawler when it rolled onto him. He died from his injuries.

38. In the Underlying Action, plaintiff makes a claim against Gibson under West Virginia Code §23-4-2(d)(2)(ii) which, if successful, would permit plaintiff to recover damages from Gibson that are in addition to those that would be allowed by the worker's compensation statute.

39. At the time of the accident in January 2015, Mr. Aguilar had been a Gibson employee, based in Gibson's Carencro, Louisiana facility for more than 10 years.

### D. The Insurance Policies

#### The Zurich Employers Liability Insurance Policy

40. In the Zurich Employers Liability insurance policy, Zurich agreed to cover all of Gibson's "workplaces listed in Items 1 or 4 of the Information Page; and . . . all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such work-places." Zurich Employers Liability Insurance Policy, General Section, E., p. 1 of 6.

41. Item 4 of the Information Page refers to a "Classification Schedule", which lists locations and employees.

42. Page five of the Classification Schedule lists "geophysical exploration – all employees & drivers." *See id.*, Classification of Operations, page 5.

43. In the Classification Schedule, the code for geophysical exploration employees and drivers is "8606V", with estimated annual payroll of $2,567,215.

44. Also in the Classification Schedule, Zurich states that it charged policy premiums of $7.67 for every $100 of reported estimated annual remuneration for those for geophysical exploration employees and drivers.

45. Zurich charged Gibson $196,905 in premiums to cover the Louisiana-based geophysical exploration crews, including all of those employees and drivers.

46. Upon information and belief, Zurich calculated, charged and collected from Gibson premiums based, in part, upon Gibson's reporting of geophysical exploration employees and drivers.

47. In the Zurich Employers Liability insurance policy, Zurich promised to pay "all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Zurich Employers Liability Insurance." Zurich Employers Liability Insurance Policy, Part Two, B, page 2 of 6.

48. Zurich further agreed that "We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits." Zurich Employers Liability insurance policy, Part Two, D., We Will Defend, page 3 of 6.

49. In the insuring agreement, Zurich promised to cover "bodily injury by accident or bodily injury by disease"; bodily injury includes resulting death under certain circumstances. Zurich Employers Liability insurance policy, Part Two, A.  How This Insurance Applies, page 2 of 6.

50. In particular, Zurich promised to cover bodily injury or death of a Gibson employee under the following circumstances:

> 1.  The bodily injury must arise out of an in the course of the injured employee's employment by you.
>
> 2.  The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.
>
> 3.  Bodily injury by accident must occur during the policy period . . .

Zurich Employers Liability insurance policy, Part Two, A., page 2 of 6.

51. The Zurich Employers Liability insurance policy does not require that an injury occur in any particular state or location in order for claims arising out of the injury to be covered.

52. Louisiana is one of the states listed in Item 3.A. of the information page of the Zurich Employers Liability insurance policy.

53. Mr. Aguilar was employed in Louisiana by Gibson.

54. In the Underlying Action it is alleged that Mr. Aguilar's bodily injury and death arose out of and in the course of his employment by Gibson.

55. Mr. Aguilar's employment was necessary or incidental to Gibson's work in Louisiana.

56. Mr. Aguilar was an "8606V" employee for whom Gibson declared payroll in Louisiana as reflected in the Zurich Employers Liability insurance policy, Classification of Operations, "Geophysical Exploration – All Employees & Drivers."  *See* Zurich Employers Liability Insurance Policy, Classification of Operations, page 5.

57. Upon information and belief, Zurich calculated, charged and was paid premiums based upon the information provided in the "Workers Compensation Classification Schedule, Item 4. Classification of Operations." *Id.*

58. No exclusion under the Zurich Employers Liability insurance policy applies to the claims asserted against Gibson in the Underlying Action.

### The Zurich Umbrella Insurance Policy

59. In the Zurich Umbrella insurance policy, American Guarantee promised to pay "on behalf of the insured those damage covered by this insurance in excess of the total applicable limits of underlying insurance." Zurich Umbrella Insurance Policy, Section I., A.

60. The claims asserted against Gibson in the Underlying Action are covered by the Zurich Employers Liability insurance policy, and they are covered by the Zurich Umbrella insurance policy.

61. No exclusion under the Zurich Umbrella insurance policy applies to the claims asserted against Gibson in the Underlying Action.

62. The accident that allegedly caused Mr. Aguilar's bodily injury took place on January 14, 2013, which is during the period of the Zurich Employers Liability and Zurich Umbrella insurance policies.

### E. American Zurich's Wrongful Denial of Coverage to Gibson.

63. Upon receipt of a copy of the complaint filed in the Underlying Action, Gibson notified Zurich of the Underlying Action.

64. On June 3, 2015, Zurich denied coverage to Gibson under the Zurich Employers Liability insurance policy for the claims asserted in the Underlying Action. In its denial letter, Zurich acknowledged that Mr. Aguilar was a "long time Omni Energy Services employee."

65. Zurich denied coverage on the basis that, according to Zurich, "Omni never reported a West Virginia exposure to AON or Zurich."

66. Prior to issuing its June 3, 2015 denial letter, Zurich failed to conduct any investigation into whether Mr. Aguilar's employment was "necessary or incidental" to Gibson's work in Louisiana.

67. After receiving Zurich's June 3 letter, Gibson protested Zurich's coverage denial and sought to have Zurich correct its incorrect and wrongful coverage position.

68. On or about June 26, 2015, Zurich reversed its position and agreed to recognize coverage for the claims asserted against Gibson in the Underlying Action.

69. Thereafter, in or about early July 2015, Zurich surreptitiously added a back-dated exclusion to the Zurich Employers Liability insurance policy, which exclusion arguably applies specifically to the claims asserted against Gibson in Count I of the Underlying Action.

70. Zurich is now relying upon the very exclusion that it added to the Zurich Employers Liability insurance policy in July 2015, more than two years after the loss, and seven months after the Underlying Action was filed, to avoid its coverage obligations to Gibson for the claims asserted in the Underlying Action.

71. On or about November 30, 2015, Zurich issued a reservation of rights letter, raising certain potential coverage defenses, but acknowledging that Zurich would be providing

Gibson with a defense in the Underlying Action under the terms of the Zurich Employers Liability policy.

72. In or about February 2016, in a second reversal of its coverage position on this insurance claim, Zurich revealed that it will not cover or pay for any settlement or judgment in the Underlying Action.

73. Specifically, Zurich has refused to participate in settlement negotiations with the plaintiff in the Underlying Action, and has indicated that it will not pay a settlement that may be reached or a judgment that may be entered against Gibson in the Underlying Action.

## COUNT I – DECLARATORY JUDGMENT
### Against Defendant American Zurich Insurance Company

74. The preceding paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

75. An actual controversy now exists between Gibson and Zurich with respect to coverage under the terms and conditions of the Zurich Employers Liability insurance policy, policy number WC 5525007-00 with policy period from 07-01-2012 through 07-01-2013, for the claims asserted against Gibson in the Underlying Action.

76. Gibson is entitled to a full and complete defense to the claims asserted in the Underlying Action under the terms of the Zurich Employers Liability insurance policy that Gibson purchased from Zurich.

77. Under the terms and conditions of the Zurich Employers Liability insurance policy, Zurich has an obligation to pay any reasonable settlement that may be reached or judgment that may be entered against Gibson in the Underlying Action.

78. Under the terms and conditions of the Zurich Employers Liability insurance policy, the claims asserted against Gibson in the Underlying Action are covered because the

bodily injury arose out of and in the course of an employee's employment by Gibson, that employment was necessary or incidental to Gibson's work in Louisiana, Louisiana is one of the states that is listed in Item 3.A. of the Information Page of the Zurich Employers Liability insurance policy, the bodily injury occurred during the period of the Zurich Employers Liability insurance policy, and no exclusion applies.

79. Gibson has complied with all terms and conditions of the Zurich Employers Liability insurance policy.

## COUNT II – DECLARATORY JUDGMENT
### Against Defendant American Guarantee & Liability Insurance Company

80. The preceding paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

81. An actual controversy now exists between Gibson and American Guarantee with respect to coverage under the terms and conditions of the Zurich Umbrella insurance policy, number UMB 5833814 00, for the claims asserted against Gibson in the Underlying Action.

82. Under the terms and conditions of the Zurich Umbrella insurance policy, American Guarantee has an obligation to pay any reasonable settlement that may be reached or judgment that may be entered against Gibson in the Underlying Action if that settlement or judgment is in excess of the limits of the underlying Zurich Employers Liability insurance policy.

83. The claims asserted against Gibson in the Underlying Action are covered under the terms and conditions of the Zurich Umbrella insurance policy because the bodily injury arose out of and in the course of the employee's employment by Gibson, that employment was necessary or incidental to Gibson's work in Louisiana, Louisiana is one of the states that is listed in Item 3.A. of the Information Page of the Zurich Employers Liability insurance policy, the

bodily injury occurred during the period of the Zurich Employers Liability insurance policy, and no exclusion applies.

84. Because the claims asserted in the Underlying Action are covered by the Zurich Umbrella insurance policy, American Guarantee has a duty to defend and indemnify Gibson to the extent that the claims exceed the limits of the underlying Zurich Employers Liability insurance policy.

85. Gibson has complied with all terms and conditions of the Zurich Umbrella insurance policy.

**COUNT III - VIOLATION OF DEFENDANT'S CIVIL LAW DUTY OF GOOD FAITH AND OF LOUISIANA'S BAD FAITH LAWS**

**Against American Zurich Insurance Company and
American Guarantee & Liability Insurance Company**

86. The preceding paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

87. Zurich is liable to Gibson because it has violated Louisiana Bad Faith Statutes through its repeated failure to adjust Gibson's claim fairly and promptly and failure to make a reasonable effort to settle claims with Gibson or Mr. Aguilar.

88. Zurich also is liable to Gibson because it has breached its duty of good faith and fair dealing under the Louisiana Civil Code.

89. Under Louisiana statute, an insurance company is liable to an insured for:

> 1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue. . . .
>
> (6) Failing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause.

La. R.S. § 22:1973; *see also* La. R.S. § 22:1892 (detailing additional acts that can subject an insurance company to bad faith liability).

90. In handling the insurance claim at issue, Zurich engaged in the wrongful practices described in Paragraph 89.

91. Despite the fact that: (i) Mr. Aguilar had worked for plaintiff for over a decade; (ii) his employment was based out of Louisiana; and (iii) his compensation was included in the company's Louisiana payroll, including for purposes related to workers compensation laws and insurance premium audits regularly preformed by Zurich; Zurich nevertheless denied the insurance claim at issue on the grounds that Mr. Aguilar's employment was not necessary or incidental to Gibson's work in Louisiana.

92. In denying the insurance claim at issue and refusing to cover the claim, Zurich misrepresented the facts relevant to their coverage determination as well as the relevant insurance policy provisions at issue.

93. Zurich failed to conduct a reasonable investigation based upon all available information regarding the insurance claim at issue – including, without limitation, the plain fact that Mr. Aguilar's employment was necessary and incidental to Gibson's work in Louisiana – before denying and refusing to cover the claim.

94. After the loss had occurred and Zurich had been provided notice of the claim, Zurich wrongfully attempted to add an exclusion onto the Zurich Employers Liability insurance policy via an endorsement, with the undisclosed and hidden purpose of bolstering Zurich's faulty arguments against coverage, and proceeded to rely on such post-loss underwriting as a basis for Zurich's attempt to avoid coverage for the claim.

95. The improper exclusion that Zurich attempted to add onto the Zurich Employers Liability insurance policy was in complete contradiction to the purpose Zurich previously had explained to Gibson for the endorsement – namely, to make sure that the claim at issue would be covered.

96. Zurich breached its civil law duty of good faith and violated Louisiana law and damaged plaintiffs by wrongfully denying and avoiding coverage for plaintiffs' claim.

97. Zurich knew that the insurance claim at issue was covered, yet willfully, maliciously and intentionally used unfair business practices in denying coverage and refusing to cover the claim.

98. As a direct result of Zurich's insurance claims misconduct, plaintiffs have suffered extensive economic damages, including but not limited to the payment of attorneys' fees to defense counsel and to coverage counsel, and the payment of other investigative and/or litigation expenses.

99. Zurich is liable for punitive damages because it possessed evidence establishing the validity of plaintiffs' claim, yet Zurich knowingly, willfully, maliciously and intentionally refused to cover plaintiffs' claim and wrongfully denied Gibson's demand for defense and indemnification for the claims asserted in the Underlying Action.

## PRAYER FOR RELIEF

An actual and justiciable controversy exists as to each party's rights, duties, obligations and liabilities with reference to the above-described facts that should be determined and declared by judgment of this Honorable Court.

WHEREFORE, plaintiffs pray for judgment against defendants as follows:

a. An Order from this Court, declaring that Gibson is entitled to coverage for the Underlying Action under policy number WC 5525007-00;

b. An Order from this Court declaring that Gibson is entitled to coverage under policy number UMB 5833814 00 in the event that there are covered losses that exceed the limits of policy number WC 5525007-00;

c. Judgment against all defendants and in favor of plaintiffs for defendants' breach of their civil law duty of good faith and fair dealing and their violation of Louisiana's bad faith statutes, with respect to their wrongful denial of plaintiffs' claim and their investigation and consideration of the claims asserted against Gibson in the Underlying Action;

d. Judgment against all defendants and in favor of Gibson for compensatory and general damages, statutory penalties, punitive damages, reasonable attorneys' fees, court costs, pre-judgment and post-judgment interest; and

e. Judgment against all defendants and in favor of Gibson for such other relief as this Court deems appropriate.

Gibson further demands a trial by jury.

**Respectfully submitted,**

**STEEG LAW FIRM, LLC**


    **/s/ Charles L. Stern, Jr.**
**CHARLES L. STERN, JR. (12451)**
**RYAN M. McCABE (31254)**
**ELISE M. HENRY (36118)**
**201 St. Charles Ave., Suite 3201**
**New Orleans, LA 70170**
**Telephone: 504-582-1199**
**Facsimile: 504-582-1240**
**E-mail: cstern@steeglaw.com**

**and**

**Pamela D. Hans (T.A.)**
(*Pro Hac Vice* **motion to be filed**)
**ANDERSON KILL, P.C.**
**1600 Market Street, Suite 2500**
**Philadelphia, PA 19103**
**Telephone: (267) 216-2720**
**Facsimile: (215) 568-4573**
**Email: phans@andersonkill.com**

**Marshall Gilinsky**
(*Pro Hac Vice* **motion to be filed**)
**ANDERSON KILL, P.C.**
**1251 Avenue of the Americas**
**New York, NY 10020**
**Telephone: (212) 278-1513**
**Facsimile: (212) 278-1733**
**Email: mgilinsky@andersonkill.com**

**Counsel for Omni Energy Services Corp.**
**and Gibson Energy, Inc.**